UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDMOND W. BROWN, JR.,

    *Plaintiff*,　　　　　　　　　CASE NO. 16-13451

v.　　　　　　　　　　　　　　DISTRICT JUDGE DENISE PAGE HOOD
　　　　　　　　　　　　　　　MAGISTRATE JUDGE PATRICIA T. MORRIS
LARRY BARNETT,
ARTHUR LEAVELL,
GREGORY TOURVILLE,
MATTHEW BRAY,
AMY MATELIC,
STEVEN RILEY,
STEPHEN GEELHOOD,
and CITY OF DETROIT,

    *Defendants*.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION TO DISMISS (Doc. 10)**

## I. RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motion to Dismiss, (Doc. 10), be **GRANTED**, and that Plaintiff's Complaint, (Doc. 1), be **DISMISSED** as to all defendants.

## II. REPORT

### A. Introduction

Plaintiff Edmond William Brown, Jr., is a state prisoner incarcerated at the Cooper Street Correctional Facility. He filed this complaint seeking damages and injunctive relief under 42 U.S.C. § 1983 against Defendants Larry Barnett, Arthur Leavell, Gregory

1

Tourville, Matthew Bray, Amy Matelic, Steven Riley, Stephen Geelhood, and the City of Detroit on September 22, 2016. (Doc. 1). On October 17, 2016, District Judge Denise Hood referred all pretrial matters to the undersigned Magistrate Judge. (Doc. 7). Defendants Riley and City of Detroit thereafter filed the instant Motion To Dismiss in lieu of an Answer on November 7, 2016. (Doc. 10).

"At the time of the illegal search of Plaintiff's home he was on parole in the City of Detroit under the jurisdiction of the Michigan Department of Corrections." (Doc. 1 at 2). Plaintiff alleges that Tourville lied under oath to Magistrate Judge Drake on May 29, 2014, about receiving information from a "paid confidential informant" that Plaintiff was selling narcotics at his abode. (Doc. 1 at 3). Tourville also supposedly placed "heroin into a Lockseal Folder" and fabricated a report that Plaintiff had supplied it (*Id.*). He did this to "obtain a search warrant authorization to search" Plaintiff's home, and Magistrate Judge Drake granted his request. (*Id.*).

Pursuant to this "illegal search warrant," Tourville and Bray raided Plaintiff's residence that day. (Doc. 1 at 4). They were accompanied by: Barnett—who claimed to have found various munitions in Plaintiff's bedroom, (Doc. 1 at 4)—Matelic—who "assist[ed] with the clearing of the residence and the search" but did not make any arrests or confiscations, (Doc. 1 at 5)—Riley—who, like Matelic, made no arrests or confiscations, (*id.*)—and Geelhood—who "was informed and approved of the arrest of Plaintiff," and who confiscated money alongside Bray and Tourville, (*id.*). During the raid, according to Plaintiff's complaint, Tourville and Bray observed Plaintiff driving on a cross street in a blue Envoy, executed a traffic stop without probable cause, and "proceeded to arrest the

2

Plaintiff and search him." (Doc. 1 at 4-5). Bray claimed to have confiscated two handguns, heroin, and $816.00, before he and Tourville transported Plaintiff back to his residence. (Doc. 1 at 4). They never impounded the car. (*Id.*). Plaintiff suggests that Tourville and Bray intentionally omitted this from their Preliminary Complaint Record. He also suggests that Bray's subsequent Firearms Report indicated that Plaintiff's "Glock semiautomatic handgun" was "recovered from [his residence]," in contradistinction to the Preliminary Complaint Report "that the Glock handgun was taken from the Plaintiff incident to his arrest . . . ." (Doc. 1 at 6).

Following the raid, Plaintiff "was transported to the Detroit Detention Center" for an interview with Bray, but Plaintiff refused to speak. (Doc. 1 at 6). He was charged with possession of a firearm when committing or attempting to commit a felony, *see* M.C.L. § 750.227b, possession of a firearm or ammunition by a person convicted of a felony, *see id.* § 750.224f, and manufacturing or delivering less than 50 grams of a controlled substance, *see id.* § 333.7401. A "parole warrant was issued to maintain jurisdiction of the Plaintiff based upon" these charges; the "detainer was placed on May 30, 2014 by Parole Agent T. Collins." (*Id.*). On June 18, 2014, "preliminary examination was conducted before the Honorable Michael Wagner." (*Id.*). At this preliminary examination, Plaintiff alleges that Tourville "falsely testified . . . that he had witnessed the Plaintiff exit [his residence] the morning of May 29, 2014, and leave in a blue Envoy"; that at the time of arrest, "the camera in the scout car was not working"; that Plaintiff was not at his residence on May 29, 2014; and "that no pistol was found at the residence during the search," contrary to the Firearms Report. (Doc. 1 at 6-7).

Bray also testified, affirming that he and Tourville stopped Plaintiff's blue Envoy, and noting that Plaintiff "never exceeded the speed limit during the time that he was being followed by" Tourville and Bray. (Doc. 1 at 7). He described Plaintiff as hiding a "blue steel automatic handgun" in "his waistband underneath his shirt," as well as heroin in his "right pocket." (*Id.*). In addition, Bray confirmed that he and Tourville confiscated $816.00 from Plaintiff, and denied knowing "who filled out the Firearm Report that stated the handgun and rifle were recovered at" the residence. (*Id.*). "Bray was simply lying to protect the person who submitted the false information in the Firearm Report." (*Id.*).

Prior to trial, the prosecution "filed [its] own motion . . . to drop all charges against the Plaintiff." Thereafter, on April 17, 2015, a "hearing was conducted to determine whether Plaintiff was guilty of violating his parole." (*Id.*). At this hearing, Defendants alleged that they did not know the prosecutor had dropped all charges against Plaintiff. (*Id.*). Plaintiff condemns these allegations as a lie. (*Id.*). He also notes that the hearing revealed that Tourville, Barnett, Metalic, "and others were actually suspended from the police force." (*Id.*). Despite his charges being dropped, these events led to a finding that Plaintiff violated his parole and, thereafter, his present re-incarceration.

Plaintiff proceeds to articulate his legal argument. "With no probable cause to stop [his] vehicle and no probable cause to search [him]," Plaintiff contends that "the recovery of any contraband was illegal. . . . and a violation of the Fourteenth Amendment." (Doc. 1 at 7). He gestures also to Bray's testimony that he confiscated $816.00, and suggests that such seizure was illegal because "[t]here was no offer of proof or any evidence that" such money was part of any controlled buy." (Doc. 1 at 8). Regarding the City of Detroit,

4

Plaintiff suggests that "[t]he customs and de facto policy of [City of Detroit] in not supervising and regulating the officers (Defendants) in [its] employ in situations of investigations and execution of search warrants was deliberately indifferent to [his] constitutional rights . . . in light of the danger of wrongful incarceration/false imprisonment and violation of Plaintiff's rights under the Fourth and Fourteenth Amendments of the United States Constitution." (Doc. 1 at 9).

### B. Motion To Dismiss Standard of Review

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the complaint with regard to whether it states a claim upon which relief can be granted. When deciding a motion under this subsection, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, a complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007) (rejecting the traditional Rule 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). Under Rule 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a

right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).

The Supreme Court has explained that the "tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (finding assertions that one defendant was the "principal architect" and another defendant was "instrumental" in adopting and executing a policy of invidious discrimination insufficient to survive a motion to dismiss because they were "conclusory" and thus not entitled to the presumption of truth). Although Rule 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era," it "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth . . . . When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

"In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed.

6

1990)). This circuit has further "held that 'documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim.'" *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)); *Yeary v. Goodwill Indus.–Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997) (finding that the consideration of other materials that "simply filled in the contours and details of the plaintiff's [second amended] complaint, and added nothing new," did not convert the motion to dismiss into a motion for summary judgment).

Because Plaintiff proceeds *in forma pauperis*, his complaint remains subject to *sua sponte* dismissal "at any time" if this Court finds that his complaint "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). In addition, federal courts hold an independent obligation to examine their own jurisdiction. *United States v. Hays*, 515 U.S. 737, 742 (1995). Rule 12(h)(3) of the Federal Rules of Procedure provides that, if a court "determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

### C.    Analysis and Conclusion

Riley and City of Detroit furnish several arguments as to why this Court should dismiss Plaintiff's complaint, but I deem two such arguments dispositive: (1) Plaintiff's § 1983 action is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994); and (2) because no federal claims will remain, this Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims. I address each argument in turn.

### 1. The *Heck* Doctrine

Defendants first posit that *Heck* bars Plaintiff's § 1983 claims. In *Heck*, the Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, . . . . A claim for damages bearing that relationship to a conviction or sentence that has *not* been invalidated is not cognizable under § 1983." 512 U.S. at 486-87. For this reason, where an inmate's § 1983 suit would "necessarily imply the invalidity of his conviction or sentence," his complaint "must be dismissed unless [he] can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487.

Following *Heck*, the Sixth Circuit observed that its language "plainly refutes the argument that Fourth Amendment claims are exempted from the requirement that a conviction must be set aside as a precondition for this type of § 1983 suit." *Schilling v. White*, 58 F.3d 1081, 1086 (6th Cir. 1995). Thus, Plaintiff cannot argue that *Heck* does not apply to his claims. Nor can he argue that the circumstances surrounding his re-incarceration escape *Heck*'s scope—"*Heck* applies as much to prisoners in custody (a habeas prerequisite) as to persons no longer incarcerated." *Schilling*, 58 F.3d at 1086; *see Heck*, 512 U.S. at 498 ("Because allowing a state prisoner to proceed directly with a federal-court § 1983 attack on his conviction or sentence would wholly frustrate explicit

congressional intent as declared in the habeas exhaustion requirement . . . the statutory scheme must be read as precluding such attacks. This conclusion flows not from a preference about how the habeas and § 1983 statutes ought to have been written, but from a recognition that Congress has determined that habeas corpus is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement, [a] specific determination [that] must override the general terms of § 1983." (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 489-90 (1973))).

Parolees in Plaintiff's position must indeed resort to the Great Writ, and not § 1983, if challenging confinement based on a parole violation. *See, e.g.*, *Powers v. Hamilton County Public Defender Commission*, 501 F.3d 592, 601 (6th Cir. 2007) ("[A] § 1983 plaintiff is entitled to a *Heck* exception if the plaintiff was precluded 'as a matter of law' from seeking habeas redress, but not entitled to such an exception if the plaintiff could have sought and obtained habeas review while still in prison but failed to do so."); *Murphy v. Martin*, 343 F.Supp.2d 603, 609 (E.D. Mich. 2004) (dismissing a prisoner suit asserting that "his re-incarceration following a parole violation would have been impossible" but for a prison policy disqualifying him from a particular program); *cf. Newmy v. Johnson*, 758 F.3d 1008, 1010-12 (8th Cir. 2014) (finding that *Heck* barred a plaintiff's civil rights claim against his parole officer for allegedly reporting falsely that he had violated parole).

For this reason, Plaintiff's § 1983 suit should be categorically dismissed as against all defendants. In particular, it should be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(h)(3)—rather than failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii)—because a dismissal under Rule 12(h)(3) is not an

9

adjudication on the merits, and would allow plaintiff to reassert his claims "if he ever succeeds in invalidating his [confinement]." *Murphy*, 343 F.Supp.2d at 609 (internal quotation marks and citations omitted); *accord Wiggins v. Metro. Gov't of Nashville-Davidson Cty, Tenn.*, No. 3:14-cv-01950, 2016 WL 1223258, at *4 (M.D. Tenn. Mar. 24, 2016) ("Thus, the Court concludes that Plaintiff's claims should be dismissed because the Court lacks subject matter jurisdiction under Heck.").

### 2. Supplemental Jurisdiction

Citing 28 U.S.C. § 1367(c), Riley and City of Detroit also ask this Court to decline to exercise supplemental jurisdiction over Plaintiff's state law claims. As a preliminary matter, I note that if *Heck* saps this Court of subject matter jurisdiction over Plaintiff's § 1983 claim, then retaining jurisdiction over his state claims would contravene Article III of the United States Constitution. *Accord Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1996) ("If the court dismisses plaintiff's federal claims pursuant to Rule 12(b)(1), then supplemental jurisdiction can *never* exist. A Rule [12(h)(3)] dismissal postulates that there never was a valid federal claim."). Because some disagreement remains as to whether *Heck* sounds in subject matter jurisdiction or strikes at merits of a claim, however, I find an alternative analysis prudent.

When a court properly retains original jurisdiction over a civil action, it "shall have supplemental jurisdiction over all other claims . . . so related to claims in the action within such original jurisdiction that they form a part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Courts may, however, "decline to exercise supplemental jurisdiction" over a claim if: (1) it "raises a novel or complex

issue of State law"; (2) it "substantially predominates over the claim or claims over which the district court has original jurisdiction"; (3) the court "has dismissed all claims over which it has original jurisdiction"; or (4) "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." *Id.* § 1367(c)(1)-(4).

In enacting § 1367, Congress gave solider form to supplemental jurisdiction's progenitor, *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966), which held, among other things, that "if the federal claims are dismissed before trial . . . the state claims should be dismissed as well." *Id.* at 726. This principle retained favor in the Sixth Circuit, which routinely held that where, as here, "all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson Theatrical*, 89 F.3d at 1254-55; *accord Booker v. City of Beachwood*, 451 F. App'x 521, 523 (6th Cir. 2011). Indeed, in *Musson Theatrical*, the Sixth Circuit indicated that "a 12(b)(6) dismissal of the touchstone claims" will typically preclude "exercise of supplemental jurisdiction over any remaining claims" absent "unusual circumstances," such as anticipated prejudice in the state courts. 89 F.3d at 1255 (quoting *Gaff v. Fed. Deposit Ins. Corp.*, 814 F.2d 311, 318 (6th Cir. 1987)). No such unusual circumstances exist here, and considering the early stage at which this case sits, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

For the reasons stated above, I recommend that Defendants' Motion To Dismiss, (Doc. 10), be **GRANTED**, and that Plaintiff's Complaint, (Doc. 1), be **DISMISSED** as to all defendants.

### III.     REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  March 3, 2017            S/ Patricia T. Morris
                                             Patricia T. Morris
                                             United States Magistrate Judge

## **CERTIFICATION**

      I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.  A copy was also sent via First Class Mail to Edmond W. Brown, Jr. #455490 at Parnell Correctional Facility, 1780 E. Parnall, Jackson, MI 49201.

Date: March 3, 2017                          By s/Kristen Castaneda
                                             Case Manager